UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| WILLIAM GRANVILLE COBLIN, JR., as *Executor of the Estate of Pollyann Coblin*, <br><br>  Plaintiff, <br><br> v. <br><br> DEPUY ORTHOPAEDICS, INC., *et al.*, <br><br>  Defendants. | Civil No. 3:22-cv-00075-GFVT-MAS <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendants' Motion to Dismiss. [R. 84.] Pollyann Coblin suffered injury and death allegedly caused by Defendants' hip replacement device. Now, Defendants move to dismiss portions of Ms. Coblin's Complaint for failure to state a claim. For the following reasons, the Defendants' Motion **[R. 84]** is **DENIED**.

**I**

On September 8, 2009, Pollyann Coblin arrived at St. Joseph Hospital in Lexington, Kentucky for a hip surgery.[1] [R. 87 at 6.] Ms. Coblin received a Pinnacle metal-on-metal hip implant manufactured, designed, and marketed by Defendants. *Id.*

In the ensuing years, Ms. Coblin experienced a litany of complications. *Id.* First, she noticed "right anterior thigh pain and swelling, numbness and tingling along the right lateral and medial thigh." *Id.* Then, she developed "foot drop." *Id.* In 2017, she was diagnosed with a pseudotumor in her right hip, "a result of metal-on-metal articulation." *Id.* Ms. Coblin

---

[1] The facts stated herein are taken from Ms. Coblin's Third Amended Complaint. [R. 87.]

subsequently underwent a "right total hip arthroplasty" revision surgery because of "failure of total hip arthroplasty," "neuropathy of the right sciatic nerve," and "metallosis." *Id.*

What befell her next was a series of additional surgeries and treatments. *Id.* In spite of these procedures, she continued to "suffer significant pain" and ultimately lost the use of her leg. *Id.* Finally, during the pendency of this litigation, Ms. Coblin passed away. [R. 87-1.] Her estate alleges that her death was caused by complications from the implant. [R. 87 at 7.] Specifically, the metal-on-metal implant was allegedly defective and dangerous because it released metal ions into Ms. Coblin's body, resulting in serious illness and death. *Id.* at 6, 11.

William Coblin, the executor of Ms. Coblin's estate, brings this action against Johnson & Johnson, Johnson & Johnson International, Johnson & Johnson Services, DePuy Orthopeadics, DePuy Products, DePuy International, and DePuy Synthes. *Id.* at 1. Johnson & Johnson is the parent company of subsidiaries Johnson & Johnson Services, Johnson & Johnson International, DePuy Products, and DePuy Synthes. *Id.* at 4. This lawsuit was initially filed in 2018 as part of a multi-district litigation (MDL) action in the United States District Court for the Northern District of Texas. [R. 1.] Based on the complexities of the MDL, the District Court for the Northen District of Texas appointed a Special Master. [R. 29.] Upon review, the Special Master recommended Ms. Coblin's case be transferred to the Eastern District of Kentucky. [R. 49.] Accordingly, Ms. Coblin's case was transferred from the Northern District of Texas to the undersigned in December 2022. [R. 50; R. 51.]

Defendants' Motion to Dismiss was initially directed at Plaintiff's Second Amended Complaint. [R. 84.] After that Motion was filed, Plaintiff Coblin filed her Third Amended Complaint. [R. 87.] The Third Amended Complaint asserts negligent misrepresentation, negligence, gross negligence, fraudulent concealment, fraudulent misrepresentation, wrongful

2

death, and several strict liability claims. *Id.* Defendants moved to strike the Third Amended Complaint for failure to comply with Federal Rule of Civil Procedure 15. [R. 96.] This Court denied the Motion to Strike, permitting the Third Amended Complaint to serve as Plaintiff Coblin's operative pleading. [R. 166.] In their pending Motion, Defendants move to dismiss Plaintiff's claims for manufacturing defect, fraudulent concealment, and fraudulent misrepresentation.[2] [R. 84.]

## II

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, a court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, "[t]he factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555).

---

[2] In her Third Amended Complaint, Plaintiff Coblin voluntarily dismissed some of the causes of action challenged by Defendants in their Motion. Because those claims have been removed in the Third Amended Complaint, any request to dismiss those claims is now moot. The Court focuses only on those challenged claims included in the Third Amended Complaint.

3

**A**

First, Johnson & Johnson and DePuy seek dismissal of the manufacturing defect claim, arguing that Plaintiff Coblin fails to identify any defect in the implant. [R. 84 at 5.] Plaintiff responds by asserting that her Amended Complaint solves this problem. [R. 88 at 2.]

Plaintiff Coblin is correct. Under Kentucky law, a strict liability manufacturing defect plaintiff must show that the product left "the hands of the manufacturer in a defective condition because it was not manufactured or assembled in accordance with its specifications." *Greene v. B.F. Goodrich Avionics Sys., Inc.*, 409 F.3d 784, 788 (6th Cir. 2005). The burden is on the plaintiff to show an "identifiable, unreasonably dangerous defect." *Hurst v. Dixie Truss, Inc.*, No. 2020-CA-0816-MR, 2021 WL 1826881, at *4 (Ky. Ct. App. May 7, 2021) (internal citation omitted).

The Third Amended Complaint satisfies this burden at the 12(b)(6) stage. Ms. Coblin first alleges that the Defendants manufactured the implant using a "citric acid passivation process" to passivate the device's components. [R. 87 at 9.] Because of this allegedly improper process, the implant released far more metal ions into Ms. Coblin's body than it should have. *Id.* Second, Plaintiff avers that the manufacturer's cooling process was faulty. *Id.* at 10. Specifically, the flawed cooling process caused the metal liner in the implant to become either too big or too small. *Id.* at 11. The metal liner's improper size allegedly allowed heightened levels of metal ions to be released within Ms. Coblin's body. *Id.*

These allegations identify two specific manufacturing defects. Accordingly, Defendants' request to dismiss the strict liability manufacturing defect claim is denied.

**B**

Next, Defendants ask the Court to dismiss the Plaintiff's claims for fraudulent concealment and fraudulent misrepresentation. [R. 84 at 8–10.]

**1**

Defendants correctly indicate that both claims are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud claims. [R. 84 at 8]; Fed. R. Civ. P. 9(b).

Ordinarily, claims challenged under 12(b)(6) must satisfy the familiar "plausibility" standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But the pleading standard for a fraud plaintiff is heightened. Specifically, the fraud plaintiff "must state with *particularity* the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b) (emphasis added). To plead with particularity, the plaintiff must provide "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (internal citation omitted). "When the complaint involves multiple defendants, then 'each defendant's role must be particularized with respect to their alleged involvement in the fraud.'" *Anderson v. Pine S. Cap., L.L.C.*, 177 F. Supp. 2d 591, 596–97 (W.D. Ky. 2001) (internal citation omitted). The purpose of this requirement is to "place[] the defendant on 'sufficient notice of the misrepresentation'" so that the defendant may respond in an "informed" fashion. *Coffey*, 2 F.3d at 162 (quoting *Brewer v. Monsanto Corp.*, 644 F. Supp. 1267, 1273 (M.D. Tenn. 1986)).

In Kentucky, "a fraud claim requires that a plaintiff establish six elements by clear and convincing evidence: (1) a material misrepresentation, (2) which is false, (3) known to be false or made recklessly, (4) made with inducement to be acted upon, (5) acted in reliance thereon, and (6) causing injury." *Derby City Cap., L.L.C. v. Trinity HR Serv*s., 949 F. Supp. 2d 712, 726 (W.D. Ky. 2013); *see generally Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) (federal courts sitting in diversity apply state substantive law and federal procedural law).

**2**

Plaintiff's allegations meet the pleading requirement for fraud. Ms. Coblin's Complaint claims that before her surgery in September 2009, Johnson & Johnson and DePuy's representative (Bill Martin) provided false literature about the implant's safety to Dr. Ellingsen (Ms. Coblin's doctor). [R. 87 at 17.] Mr. Martin's literature represented that the implant has been used in Europe "long before it was released in the United States and had good results statistically." *Id.* Ms. Coblin states that Mr. Martin knew this to be false. *Id.* He allegedly knew as much because a very similar hip implant sold by Defendants was "removed from the European market [in 2004] because of extremely high rates of revisions of over 15% at 5 years." *Id.* A 2004 report issued by European authorities identified heightened metal ion release as a key problem with the discontinued product. *Id.* at 18–19. In September 2009, Ms. Coblin and Dr. Ellingsen allegedly decided to use the Defendants' hip implant in reliance on Mr. Martin's false representations. *Id.*

At various points, Defendants allegedly targeted doctors with marketing materials stating that Ms. Coblin's implant had "the lowest published ion levels in the industry." *Id.* at 19–20. DePuy also at some point advertised to physicians that Ms. Coblin's implant "has a 99.9% survivorship at five years." *Id.* at 21. Then, when the implant was discontinued, Defendants

6

published a statement on their website that "[t]he decision to discontinue [the implant] is not related to safety or efficacy . . . [the products] are backed by clinical data showing they are safe and effective . . . ." *Id.* at 22.

Ms. Coblin alleges that Defendants had knowledge of the implant's problems when the false statements were made. *Id.* at 17–26. DePuy executive, Paul Berman (director of hip marketing), stated in an 2008 email that "[w]e continue to hear growing concerns over [metal-on-metal] hips. . . . The team at the mayo clinic have warned us that metal will take a significant hit over the next few months based on papers and presentations at and prior to aaos [American Academy of Orthopedic Surgeons]." *Id.* at 19. In September 2008, after attending a hip society meeting, Michael Rhee wrote in an email to Mr. Berman that the surgeons attending the meeting had "serious concern[s]" about metal-on-metal implants.[3] *Id.* at 22. Rhee continued that "80% of the [surgeon] attendees had seen [a] tissue reaction" from a metal-on metal device. *Id.* These reactions, according to Rhee, looked "bad," "alarming[,] and concerning." *Id.* After receiving this warning, Mr. Berman allegedly instructed his subordinates in a 2008 email to "keep quiet for now." *Id.* at 22–23. Additionally, Ms. Coblin states, DePuy knew of the dangerous heightened metal particle release prior to 2009 through internal simulator testing of the implant.[4] *Id.* at 19–21.

Ms. Coblin pleads her fraud claims with particularity. First, she states a claim for fraud under Kentucky law. The Complaint alleges several material misrepresentations. Plaintiff provides evidence of the falsehood of these statements; she also cites internal emails, studies, and tests indicating the Defendants knew of the falsity of these statements. Further, the glowing

---

[3] Plaintiff does not clarify who Michael Rhee is.
[4] Ms. Coblin suggests that Defendants may have known of the implant's problems as early as 2001, when a DePuy employee published a paper concluding that metal-on-metal implants generate a heightened number of metal particles compared to a non-metal-on-metal implant. *Id.* at 20.

7

literature allegedly provided to Dr. Ellingsen was made to induce reliance; Dr. Ellingsen indicates that he did in fact rely on these statements when he decided to use the implant in Ms. Coblin's case.  Further, Defendants' various advertisements and marketing materials were allegedly intended to induce reliance.  Finally, Ms. Coblin states she was injured as a consequence of the misrepresentations.  Thus, Ms. Coblin has alleged a fraud claim under Kentucky law.

Further, Ms. Coblin satisfies Rule 9(b)'s particularity requirement.  Plaintiff Coblin identifies the source of the representations (website statements, advertising materials, and representations to Dr. Ellingsen).  And Ms. Coblin identifies the role of the particular corporate Defendants in the fraud.  She indicates that Bill Martin, a representative of DePuy and Johnson & Johnson made false claims.  She further states that Defendant DePuy made false statements in its advertisements to doctors and on its website.  *See Newberry v. Serv. Experts Heating & Air Conditioning, L.L.C.*, 806 F. App'x 348, 362 (6th Cir. 2020) ("[A] complaint that identifies a particular corporate defendant as well as the 'time, place, and content of the alleged misrepresentation' need not also identify the corporation's individual employee who made the alleged fraudulent misrepresentation.") (internal citation omitted).  Finally, she alleges that Johnson & Johnson and DePuy intentionally concealed their knowledge of the implant's dangers.  And although Ms. Coblin does not provide specific dates for every single instance of misrepresentation or concealment, "[c]ourts [assessing 9(b) particularity] are [] more lenient when the alleged wrong did not occur at a discrete time and place and instead 'the transactions involved are complex or cover a long period of time.'"  *Pascarella v. Swift Transp. Co.*, 694 F. Supp. 2d 933, 941 (W.D. Tenn. 2010) (internal citation omitted).  The allegations are sufficient

to put the Defendants on notice. The Court declines to dismiss the fraudulent concealment and fraudulent misrepresentation claims.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants' request to dismiss Plaintiff's claims for manufacturing defect, fraudulent misrepresentation, and fraudulent concealment **[R. 84]** is **DENIED;** and

2. The remainder of Defendants' Motion **[R. 84]** is **DENIED AS MOOT**.

This the 22nd day of March, 2024.

Gregory F. Van Tatenhove
United States District Judge