UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| WILLIAM GRANVILLE COBLIN, JR., *as Executor of the Estate of Pollyann Coblin,* | ) ) ) ) | |
| Plaintiff, | ) ) | Civil No. 3:22-cv-00075-GFVT-MAS |
| v. | ) ) | **MEMORANDUM OPINION** |
| DEPUY ORTHOPAEDICS, INC., *et al.,* | ) ) ) | **&** |
| Defendants. | ) ) | **ORDER** |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment. [R. 124.] Pollyann Coblin suffered injury and death allegedly caused by Defendants' hip replacement device. Now, Plaintiffs urge the application of nonmutual offensive collateral estoppel. Because estoppel should not be applied offensively in the face of inconsistent judgments, the Plaintiff's Motion **[R. 124]** is **DENIED**.

**I**

This lawsuit was filed in 2018 as part of a multi-district litigation (MDL) action in the United States District Court for the Northern District of Texas. [R. 1.] Based on the complexities of the MDL, the District Court for the Northen District of Texas appointed a Special Master. [R. 29.] Upon review, the Special Master recommended Ms. Coblin's case be transferred to the Eastern District of Kentucky. [R. 49.] Accordingly, Ms. Coblin's case was transferred from the Northern District of Texas to the undersigned in December 2022. [R. 50; R. 51.]

A review of the Bellwether cases in this MDL is instructive.[1]  [R. 132 at 1; R. 124 at 2 n.1.]  The first Bellwether case ("*Paoli*") resulted in a total defense verdict.  *See Herlihy-Paoli v. DePuy Orthopaedics, Inc.*, No. 3:12-cv-04975-K (N.D. Tex.) (applying Montana law).  Post-trial, the parties settled, hence the verdict was not appealed.  [R. 213]; [R. 224.]  The second action ("*Aoki*") resulted in a plaintiffs' verdict.  *Aoki v. Johnson & Johnson Servs., Inc.*, 3:13-cv-01071-K (N.D. Tex.) (applying Texas law).  But the *Aoki* verdict was vacated by the Fifth Circuit because of the district court's "egregious, multiple, and prejudicial" evidentiary errors, as well as misrepresentations by counsel.  *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 784, 792 (5th Cir. 2018).  The case was remanded for a new trial; but during the pendency of that trial, the parties settled, and the action was dismissed.  [R. 124 at 2 n.1.]

*Andrews v. DePuy Orthopaedics, Incorporated* ushered in another plaintiffs' verdict.  No. 3:15-cv-03484-K (N.D. Tex.) (applying California law).  Post-trial, the parties settled, so the judgment was not appealed.  [R. 132 at 1.]  As for the fourth Bellwether, a sense of déjà vu: another plaintiffs' verdict, and another post-trial settlement.  *Id.*; *see Alicea v. DePuy Orthopaedics, Inc.*, No. 3:15-cv-03489-K (N.D. Tex.) (applying New York law).

---

[1] *See* Bellwether Trial, Black's Law Dictionary (11th ed. 2019) ("A nonbinding trial of a case, or set of cases, on issues representative of the common claims in a larger mass-tort proceeding, held to determine the merits of the claims and the strength of the parties' positions on the issues.").

> Bellwether trials are meant to produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis.

*In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 348–49 (5th Cir. 2017).

## II

Plaintiff Coblin asks this Court to give the second, third, and fourth Bellwether verdicts preclusive effect in this action.  As for the unfavorable result of the first Bellwether, the Plaintiff's request is straightforward: ignore it.  Because the Court declines to "don blinders" in the face of inconsistent judgments, it will deny the Plaintiff's Motion.  *Raynor v. Richardson-Merrell, Inc.*, 643 F. Supp. 238, 246 (D.D.C. 1986).

Under Rule 56, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe."  *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Morales v. Am. Honda Motor Co.*, 71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 255).

## A

Plaintiff Coblin asks this Court to apply offensive nonmutual collateral estoppel in the context of three distinct issues: (1) whether the Pinnacle Implant had a design defect; (2) whether Johnson & Johnson sold the Pinnacle Implant; and (3) whether Johnson & Johnson participated

3

in the design of the Pinnacle Implant.  [R. 124.]  Defendants reject this request, asserting that nonmutual offensive collateral estoppel is inappropriate and unfair in this context.  [R. 132.] Defendants are correct.

**1**

District courts assessing the propriety of offensive collateral estoppel have "broad discretion[.]"  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).  Against the backdrop of "successive federal diversity actions," courts "apply state law to determine whether a prior decision has preclusive effect, so long as the state rule is not 'incompatible with federal interests.'" *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 921 (6th Cir. 2022), *cert. denied sub nom. E. I. du Pont de Nemours & Co. v. Abbott*, 144 S. Ct. 16 (2023) (quoting *Prod. Sols. Int'l, Inc. v. Aldez Containers, LLC*, 46 F.4th 454, 457–58 (6th Cir. 2022)).

Accordingly, even when the state law elements of collateral estoppel are satisfied, courts should decline to apply it when doing so would be unfair.  *Id.* at 922; *see also In re Air Crash at Detroit Metro. Airport, Detroit, Mich. on Aug. 16, 1987*, 776 F. Supp. 316, 325 (E.D. Mich. 1991) ("The contours of when offensive collateral estoppel would be unfair—even in mass tort litigation—should be developed on a case-by-case basis."); *Parklane Hosiery, Co.*, 439 U.S. at 331 ("[I]n cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel."). The Supreme Court's *Parklane Hosiery* considerations establish the contours of a fairness inquiry.  439 U.S. 322, 330 (1979).

**2**

First, offensive nonmutual collateral estoppel is ill advised when its application "would encourage 'a wait and see attitude'" among potential plaintiffs[.]"  *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th at 922 (quoting *Parklane Hosiery, Co.*, 439 U.S. at 331); *Parklane Hosiery, Co.*, 439 U.S. at 330 ("Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to [] 'wait and see[.]'").  Second, courts should decline to apply estoppel if the defendant "did not have a reason 'to defend [initial actions] vigorously, particularly if future suits [were] not foreseeable.'"  *Id.*  Third, the doctrine should not be used "if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Id.*  Fourth, estoppel is inappropriate when the later suit gives the defendant "procedural opportunities" that (1) could cause a different result; and (2) were unavailable to the defendant in the first action.[2] *Id.*

First, the parties dispute whether Texas or Kentucky collateral estoppel law applies.  For reasons that will become apparent, "the distinction is largely immaterial because both states have adopted the considerations laid out in *Parklane Hosiery*[.]"  [R. 132 at 2.]

---

[2] Courts have approached offensive collateral estoppel with caution in the context of mass actions.  *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 n.14 (1979) ("[A]railroad collision injures 50 passengers all of whom bring separate actions against the railroad.  After the railroad wins the first 25 suits, a plaintiff wins in suit 26.  Professor Currie argues that [] collateral estoppel should not be applied [] to allow plaintiffs 27 through 50 automatically to recover."); *In re Parish*, 81 F.4th 403, 416 (5th Cir. 2023) ("[T]he results of test plaintiffs in a bellwether trial are to be used for informational purposes only, not for issue preclusion."); Linda S. Mullenix, *Problems in Complex Litigation*, 10 Rev. Litig. 213, 222 (1991) ("[T]he federal appellate courts have effectively eliminated issue preclusion as a means of preventing the relitigation of duplicative claims, except in the narrowest of circumstances.  These doctrines have frustrated the ability of federal courts to deal with mass tort cases in an aggregative fashion . . . .").  The Sixth Circuit recently clarified that there is no *per se* bar on offensive nonmutual collateral estoppel in the mass tort context.  *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th at 923. Rather, offensive collateral estoppel *can* be used in the mass tort context so long as its use is consistent with state law and *Parklane Hosiery*. *Id.*  On the facts in that case, the Sixth Circuit emphasized that the "unique parameters" established by a settlement agreement and resulting MDL "play[ed] the key role" in its fairness analysis. *Id.* at 926.

**B**

As a threshold matter, the second Bellwether verdict clearly cannot be preclusive when it was vacated on appeal.  Secondly, even if it were, the *Parklane Hosiery* considerations counsel against preclusion as to all three Bellwether plaintiffs' verdicts.

**1**

As for the second Bellwether, *Aoki*, Plaintiff's estoppel argument fails for two reasons.

First, that action lacks a final judgment.  The *Aoki* plaintiffs' verdict was vacated by the Fifth Circuit on the basis of "the district court's serious evidentiary errors and counsel's misrepresentations."  *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 792 (5th Cir. 2018).  Defendants correctly note that "preclusion requires a 'judgment,' and when the case is overturned on appeal, no judgment remains."  [R. 132 at 4 n.1.]; *see also Erebia v. Chrysler Plastic Prods. Corp.*, 891 F.2d 1212, 1215 (6th Cir. 1989) ("A judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel.") (internal citation omitted); 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4432 (3d ed. 2023) ("There is no preclusion as to [] matters vacated . . . .Reversal and remand for further proceedings on the entire case defeats preclusion entirely until a new final judgment is entered by the trial court or the initial judgment is restored by further appellate proceedings."); *Moore v. Commonwealth*, 954 S.W.2d 317, 319 (Ky. 1997) (requiring a final judgment on the merits as an "essential element" of collateral estoppel); *Bridgestone Lakes Cmty. Improvement Ass'n, Inc. v. Bridgestone Lakes Dev. Co.*, 489 S.W.3d 118, 127 (Tex. App. 2016) (same).

Secondly, the *Aoki* Defendants apparently did not have a full and fair opportunity to litigate at trial.  On appeal, the Fifth Circuit found that trial counsels' misrepresentations "obviously prevented defendants from 'fully and fairly' defending themselves."  *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d at 792.  *See Berrier v. Bizer*, 57 S.W.3d 271, 281 (Ky. 2001) (nonmutual offensive collateral estoppel "applies only if the party against whom it is sought to be applied had a realistically full and fair opportunity to litigate the issue"); *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994) (requiring a full and fair litigation opportunity as a prerequisite to estoppel).  Accordingly, the Court agrees with the Defendants that neither Kentucky nor Texas law would permit the use of offensive collateral estoppel as to the *Aoki* verdict.

## 2

As for the findings in *Andrews* (the third Bellwether), and *Alicea* (the fourth Bellwether), the Plaintiff's Motion fares no better.  The Court agrees with the Defendants that even if the state law elements of estoppel are satisfied, applying the doctrine in the context of inconsistent verdicts would be unfair.

### a

First, the Court is minimally concerned that applying estoppel here would encourage a "'wait and see' attitude" among potential plaintiffs.  *Parklane Hosiery Co.*, 439 U.S. at 331. The Court has no reason to think that Plaintiff Coblin has adopted a 'wait and see' approach—to the contrary, she "in fact joined her case in the multidistrict litigation."  [R. 149 at 3.]

**b**

Nor does the second *Parklane Hosiery* consideration apply.  As far as this Court can tell, "the MDL structure presented [DePuy] with 'every incentive,' to defend itself vigorously in each of the early trials[.]"  *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th at 927 (quoting *Parklane Hosiery, Co.*, 439 U.S. at 332).  Indeed, this Court's review of the records in those cases reveals that Defendants *did* defend those actions with vigor.  And as this Court pointed out during a *Daubert* hearing in this matter, "[i]t's hard to describe . . . an MDL as a trial by ambush given the process that takes place."  [R. 179 at 19.]  Hence, the Court is not concerned that Defendants lacked an incentive to vigorously defend themselves in the initial actions.

**c**

But the analytical significance of DePuy's litigation incentive is dwarfed by a glaring problem: the existence of inconsistent judgments.  Moreover, the Court finds that the third factor weighs heavily against estoppel.

"Allowing offensive collateral estoppel may [] be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant."  *Parklane Hosiery, Co.*, 439 U.S. at 330; *see also id.* at 330 n.14.

As for why this Court should ignore the total defense verdict in the first Bellwether trial (*Paoli*), Plaintiff's reasoning is conjectural. [R. 124 at 5 n.4.]  "[T]he [*Paoli*] jury [] combined in the same jury question whether the product was defective and whether plaintiff suffered an injury from the defect."  *Id.*  Therefore, the Plaintiff surmises, the *Paoli* jury *might* have found a design defect even though it ultimately returned a defense verdict on the issue.  *Id.*

8

This argument fails because it is speculative.  Neither this Court nor the parties know whether the *Paoli* jury found an injury but no defect, a defect but no injury, no defect and no injury, an injury but no causation, etc.  Courts entering the arena of offensive collateral estoppel are admonished to proceed with caution.  *See generally Parklane Hosiery*, 439 U.S. at 322; *see also id.* at 329 ("[O]ffensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does.").  On the basis of speculation, the Court declines to throw caution to the wind.  18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4465.2 (3d ed. 2023) ("The existence of inconsistent prior judgments is perhaps the single most easily identified factor that suggests strongly that neither should be given preclusive effect[.]"); *Erbeck v. United States*, 533 F. Supp. 444, 447 (S.D. Ohio 1982) ("The inconsistency of opinions where multiple parties are suing one defendant in similar (albeit not identical) fact situations is the exact instance where it would be unfair for the trial court to allow the use of offensive collateral estoppel against [a] defendant.");  *Cf. In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th at 927 (dispelling concerns about inconsistent verdicts because the MDL "[Defendant] was not successful at any trial").

Because the *Paoli* jury found that DePuy was not liable on every issue, it did not need to address the issue of Johnson & Johnson's connection to any underlying tortious conduct.  Still, because the jury found no liability for Johnson & Johnson, its verdict is inconsistent with the findings of the other purportedly preclusive Bellwethers.  *See Raynor v. Richardson-Merrell, Inc.*, 643 F. Supp. 238, 246 (D.D.C. 1986) (no offensive collateral estoppel in products liability action with inconsistent judgments); *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 346 (5th Cir. 1982) ("One jury's determination should not, merely because it comes later in time,

bind another jury's determination of an issue over which there are equally reasonable resolutions of doubt.").

With the second Bellwether verdict having been vacated, Plaintiff essentially asks the Court to choose between the two Bellwether plaintiffs' verdicts and the one Bellwether defense verdict. In the face of these inconsistent judgments, the Court declines to pick and choose. *See* Restatement (Second) of Judgments § 29 (Am. L. Inst. 2023) ("[Collateral estoppel] is justified . . . by underlying confidence that the result reached is substantially correct. Where a determination relied on as preclusive is itself inconsistent with some other adjudication of the same issue, that confidence is generally unwarranted."). Accordingly, the third *Parklane Hosiery* consideration counsels strongly against offensive collateral estoppel.

**d**

Finally, the fourth consideration does not cut against preclusion here. The Court disagrees with Defendants that this single-plaintiff case presents different "procedural opportunities" from the purportedly preclusive consolidated Bellwethers. [R. 132 at 10–11 (arguing that a consolidated trial creates a danger of anti-defendant bias)]. A previous consolidated trial is not the typical example of a procedural opportunity unavailable in the first instance. *See, e.g.*, *Parklane Hosiery, Co.*, 439 U.S. at 331 n.15 ("If, for example, the defendant in the first action was forced to defend in an inconvenient forum and therefore was unable to engage in full scale discovery or call witnesses, application of offensive collateral estoppel may be unwarranted."); *Montana v. United States*, 440 U.S. 147, 164 n.11 (1979) ("Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.").

10

Defendants' unpersuasive procedural argument notwithstanding, the Court finds that the third *Parklane Hosiery* consideration is controlling. Accordingly, the Court declines to apply collateral estoppel offensively in this context.

**III**

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the Plaintiff's Motion for Partial Summary Judgment **[R. 124]** is **DENIED.**

This the 3d day of April, 2024.

Gregory F. Van Tatenhove
United States District Judge